## ARMENT v. YAMHILL COUNTY.
[43 Pac. 653.]

1. RULE FOR CONSTRUING CONTRACTS.— Written contracts should be considered from the standpoint of the parties when they were contracting, and be so construed as to give effect to all the provisions, if possible, always prefering that construction which makes the agreement legal rather than one which will make it void: *Hildebrand* v. *Bloodsworth*, 12 Or. 80, approved and followed.

2. CONSTRUCTION OF CONTRACT WITH COUNTY.— A contract with county commissioners for plats and lists of taxable real estate within the county provided that, as a "consideration," fifty dollars was to be paid on their delivery; that in addition thereto the contractors were to receive "for compensation," (1) "An amount equal to the levy of the total tax of eighteen hundred and ninety on all such taxable real estate as shall be found unassessed," etc., and (2) "an amount equal to one half of the levy * * * of the year eighteen hundred and ninety-one," etc., payment "to be made from month to month, as the said tax shall have been collected by the sheriff of said county, and placed to the credit" of the contractors. *Held*, that the additional consideration provided was not for the payment absolutely of amounts equivalent to the designated parts of the levies of eighteen hundred and ninety and eighteen hundred and ninety-one, but for the payment of the designated part of such levies actually collected by the sheriff, payable from month to month, as collected.

APPEAL from Marion: GEORGE H. BURNETT, Judge.

This is an action to recover upon the following contract as modified after the date of its execution by the

parties thereto, namely, "This agreement made and entered into this eighth day of January, A. D. one thousand eight hundred and ninety-one, by and between the county commissioners of Yamhill County, State of Oregon, in regular session assembled, parties of the first part, for and in behalf of said County of Yamhill, State of Oregon, and W. T. Shurtleff, J. A. Arment, and Paul A. Ozanne, parties of the second part,—*Witnesseth:* That whereas said parties of the second part have submitted to the commissioners of said county a proposition to furnish said county a list of all the taxable real property lying within its boundaries, and also precinct plats showing the separate tracts and individual ownership thereof, as disclosed by the records of said county; and whereas said proposition of the parties of the second part has this day been accepted, ratified, and approved by said commissioners, for and in behalf of said County of Yamhill, State of Oregon. Now, therefore, be it known that the conditions of this agreement to which we, the parties of the first part, for and in behalf of said county, and we, the parties of the second part, are held and firmly bound, are as follows, to wit: *first,* the said parties of the second part, for and in consideration of the sum of fifty dollars, and in further consideration of the conditions hereinafter mentioned, hereby agree to furnish said county precinct plats of all the taxable real property lying within the boundaries of said county, as at present subdivided into precincts, said precinct plats to show the individual ownership of all the taxable real property lying therein, as disclosed by the records of said county at the date of the delivery thereof; said precinct maps not to include the plat of any town or towns lying therein; *second,* said parties of the second part further agree to furnish

said county with a list or roll of all said taxable real
property lying within said county, and showing the
individual tracts and ownership of the same as dis-
closed by said precinct plats; said rollbook and in-
dices to same to be furnished by said county; *third,* said
list or roll above mentioned to contain a sufficient
description of the real property therein described
so that tax deeds may readily be drawn from said
descriptions, if found necessary; *fourth,* said precinct
plats and roll to be delivered on or before the first
day of September, eighteen hundred and ninety-one;
*fifth,* the parties of the second part, in addition to the
consideration first above mentioned, are to receive for
compensation for such services the following, to wit:
*first,* an amount equal to the levy of the total tax of
eighteen hundred and ninety on all such taxable real
property as shall be found unassessed on or after this
date, whether found by the said parties of the second
part or otherwise, the usual fee allowed the sheriff of
said county for the collection of said tax to be de-
ducted therefrom; *second,* an amount equal to one half
of the levy of the total tax of eighteen hundred and
ninety-one, as made by the County Court of Yamhill
County for county purposes, less one half of the usual
fee allowed the sheriff of said county for the collec-
tion of said tax; *third,* the parties of the second part
shall further be entitled to receive an amount equal
to one half of all the collectible taxes in arrears for
the five years preceding the year eighteen hundred
and ninety, upon all such property as shall hereafter
be found unassessed;  *  *  *  *sixth,* the asssessment
upon all real property hereafter found unassessed shall
be fairly and equitably made; *seventh,* the fifty dollars
first above mentioned shall be paid to second party
upon the delivery of said precinct plats and assess-

ment roll, and the remaining payments to be made from month to month as the said tax shall have been collected by the sheriff of said county, and placed to the credit of said parties of the second part." On March thirteenth, eighteen hundred and ninety-one, this contract was modified by substituting township for precinct maps. On September fifteenth the time for completing the maps and roll was extended to October first, eighteen hundred and ninety-one, and thereafter clause numbered "third" was stricken out. In other respects the contract sued upon remained as executed.

It appears from the complaint that the plaintiffs found unassessed sixty-five thousand four hundred and seventy-one acres of real property and numerous city and town lots within the county, which the sheriff afterwards assessed for the year eighteen hundred and ninety at two hundred and seventy-nine thousand three hundred and sixty-six dollars. The tax levy for the year named was twenty-two mills on the dollar, which would produce six thousand one hundred and forty-six dollars and five cents. Deducting the sheriff's fees, one hundred and thirty-three dollars and thirty-one cents, there would remain a balance of six thousand and twelve dollars and seventy-four cents. Of this tax so levied the sheriff has collected about one thousand two hundred dollars, the exact amount of which is unknown to plaintiffs. The plaintiffs have been paid out of the general funds of the county two thousand and twenty-two dollars and ninety-four cents, leaving a balance due them on this account of three thousand nine hundred and eighty-nine dollars and eighty cents. The tax levy for county purposes for the year eighteen hundred and ninety-one was four and ninety-eight hundredths mills on the dollar, and

the entire levy upon such unassessed lands and town lots was one thousand three hundred and ninety-one dollars and twenty-four cents, one half of which, after deducting the usual fee allowed the sheriff, amounts to six hundred and eighty-eight dollars and sixty-seven cents. Of this three hundred and eighty-five dollars and thirty cents has been paid by the county, leaving a balance due from this source of three hundred and three dollars and thirty-seven cents. It is alleged that about March ——, eighteen hundred and ninety-two, the defendant and said sheriff ceased all further efforts to collect the tax levied upon said assessments, and that Shurtleff had assigned his interest in the contract to plaintiffs. The prayer is for judgment against defendant for four thousand two hundred and ninety-three dollars and seventeen cents, and costs and disbursements. The complaint contains other allegations pertinent to the cause, but the foregoing statement of the facts is sufficient, under the view we take of the contract, to give the reader a proper understanding of the opinion. A demurrer was interposed, which being sustained, judgment was entered dismissing the complaint, from which plaintiffs appeals.                                    AFFIRMED.

For appellants there was briefs by *Messrs. Irvine and Coshow,* and *Durham, Platt and Platt,* with oral arguments by *Messrs. O. P. Coshow* and *Robert Treat Platt.*

For respondent there was a brief by *Messrs: James McCain,* district attorney, and *Ramsey and Fenton,* with an oral argument by *Mr. W. M. Ramsey.*

Opinion by MR. JUSTICE WOLVERTON.

1. The contract which we are called upon to construe was certainly not drawn by the hand of an adept

in the business, as, without its modification, it would seem the draughtsman had been peculiarly felicitous in stating as much of what was not wanted to be stated as that which was pertinent. Even in its present condition plaintiffs are not claiming under it as its literal interpretation would seem to import. But, like all other contracts in writing, this must be construed by taking it at the four corners and looking through the whole instrument from the identical standpoint of the contracting parties when it was entered into, and that construction must be given it, if possible, which will give effect to all its parts and carry out the obvious intention of the parties, and which will make the contract legal, rather than one that will render it void: *Hildebrand* v. *Bloodsworth,* 12 Or 80 (6 Pac. 233); 2 Parsons on Contracts, 500, 505.

2. The parties differ widely as to the proper interpretation of those provisions of the agreement touching the nature and amount of the additional consideration, and the time and manner of its payment by the county. The plaintiffs contend that the "first," "second," and "third," clauses read in connection the "seventh," determines the measure of the additional consideration to be an amount equal to the levy of the total tax of eighteen hundred and ninety on all such taxable real property as should be found unassessed on or after the date of the contract, plus an amount equal to one half of the levy of the total tax of eighteen hundred and ninety-one for county purposes only, upon such taxable real property, less the usual fee allowed the sheriff for collection, and that in effect the county obligated itself to pay these amounts absolutely, at the expiration of a reasonable time within which to make the collections; in other

words, that the county incurred an absolute liability by entering into said contract, upon its performance by plaintiffs, to pay under the "first" clause six thousand and twelve dollars and seventy-four cents, and under the "second" the sum of six hundred and eighty-eight dollars and sixty-seven cents, all which was payable unconditionally at the expiration of a reasonable time within which to collect the sums named from the taxpayers. Upon the other hand, the defendant claims that the additional consideration which the plaintiffs were to receive was made conditional, and depended upon the collection of the taxes designated, that the identical money (taxes) collected should be placed to the credit of plaintiffs, and paid to them from month to month, and none other, and that the liability of defendant is commensurate only with the amount of such taxes actually collected. So we are to extract from this contract the nature and amount of the additional consideration provided for, and the time and manner of its payment. The nature and amount of such consideration is the pivotal question, the time and manner of payments are but incidents thereto, yet the provisions of the contract touching the latter are of vital force in determining the former. It will be unnecessary to make a critical analysis of the contract, as the controversy, thus narrowed, must be determined by the effect of a few controlling elements, considered from the standpoint of the parties at the time of its execution.

The duties of sheriff as tax collector are well known. He is in no way subject to the control and direction of the county court in the exercise of such duties, and can in no way be affected by its actions touching the assessment of omitted property and the collection of taxes, except as its exercise of discre-

tionary powers touching settlements with that officer upon his return of the tax rolls, and at the annual accounting required in July of each year, may incidentally affect him. As tax collector he is not an officer of the court to execute its orders and mandates, but is simply accountable under the statute and upon his official bond, as other officers known to the law. By clause "sixth" the county has stipulated that "the assessment upon all real property hereafter found unassessed shall be fairly and equitably made." Thus far it vouches for the acts of the tax collector, that the assessment when made by him shall be fair and equitable, otherwise it does not undertake that his duties shall be faithfully performed, and especially is it true that the county does not undertake that he shall collect the whole tax to be levied. Taxes of the kind contemplated by the contract, state, county, and school, and especially the county tax, are the funds and property of the county in which they are levied: *Hume* v. *Kelly,* 28 Or. 398 (43 Pac. 380). Now, in the light of these conditions, it was stipulated, in contradistinction to the consideration of fifty dollars, which was to be paid absolutely upon the delivery of the plats and assessment roll, that the parties of the second part are to receive for compensation in addition to the fifty-dollar payment, "first, an amount equal to the levy of the total tax of eighteen hundred and ninety on all such taxable real property as shall be found unassessed * * * the usual fee allowed the sheriff of said county for the collection of said tax to be deducted therefrom"; and "second, an amount equal to one half of the levy," etc., of the year eighteen hundred and ninety one for county purposes, with the same provision as to the "usual fee allowed the sheriff-

28 OR.—34.

iff." Then comes a stipulation for the payment of these equivalent amounts, which is "to be made from month to month as the said tax shall have been collected by the sheriff of said county, and placed to the credit of said parties of the second part." We think a reasonable deduction to be drawn from all this is that the additional consideration which the plaintiffs were to receive was made contingent and conditional upon the sheriff making collection of the taxes named, which should constitute a fund to be set aside by the county for their benefit, and should be paid to them from month to month as collected. If the contract does not mean this, why make and sustain the distinction all the way through between the two kinds of consideration, and why provide for the collection, setting aside, and payment of a special fund to the plaintiffs? It would have been a simply and easy matter to have provided directly just what the consideration should be. Not having done this, it is but a reasonable inference that no absolute consideration was intended, aside from the fifty dollars named. Under this construction of the contract stipulation, *Noland* v. *Bull,* 24 Or. 479, (23 Pac. 983,) and other authorities of like tenor relied upon by plaintiffs can have no application. The doctrine there established is that "where there is a present indebtedness due absolutely, and the happening of some future event is fixed for a convenient time for payment merely, and such future event does not happen, the debt is payable within a reasonable time." Here there is no present or absolute indebtedness; indeed, no debt aside from the fifty dollars was contemplated, but provisions were made looking to the creation of a fund to be paid to plaintiffs as it accumulated, and to which they were to look solely for compensation, aside from the consideration first named in

the contract. Viewed in the light of this construction of the agreement, the complaint shows upon its face that plaintiffs have been paid even more than they were entitled to, and hence the judgment of the court below will be affirmed.                AFFIRMED.