Argued April 3, reversed and remanded April 29, 1964

# MIGNOT *v.* PARKHILL
391 P. 2d 755

*Gene L. Brown,* Grants Pass, argued the cause for appellant. With him on the briefs was R. Gene Smith.

*W. W. Balderree,* Grants Pass, argued the cause for respondent. On the brief were Balderree & Calvert.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL and LUSK, Justices.

LUSK, J.

This is an appeal by the plaintiff from a judgment on the pleadings in favor of the defendant.

The plaintiff brought an action at law to recover from the defendant the sum of $15,330.20, alleged to be the balance due him on a contract in writing under which plaintiff agreed with the defendant to build an access logging road approximately 6.40 miles in length for an agreed consideration of $123,700. A copy of the contract, attached to the original and amended complaints, refers to a contract entered into by Bate Lumber Co., an Oregon corporation, with the United States Department of Agriculture to build such logging road and another contract by which the defendant agreed to assume the obligations of Bate Lumber Co. under the contract with the United States Department of Agriculture. Substantially, the contract sued upon appears to be an agreement by the plaintiff to build the road in accordance with the terms and conditions of the prior contracts. It contains this provision:

"It is fully understood by and between the parties hereto that the Contractor [defendant] shall not be obligated to pay Subcontractor [plaintiff] for any of the work until such time as Contractor has himself received the money from Bate Lumber Co."

A demurrer to the complaint filed by the defendant was sustained, apparently on the ground that receipt of "the money" by defendant from Bate Lumber Co. was a condition precedent to liability of defendant which must be pleaded and proved by the plaintiff.

Plaintiff then filed an amended complaint which included the following allegation:

"That prior to the commencement of this action defendant received all moneys due him under the terms of his contract with Bate Lumber Co."

Defendant moved to strike this allegation and the motion was allowed.

Plaintiff next filed a second amended complaint in which all mention of the written contract with the defendant was omitted and recovery was sought on the basis of quantum meruit. Defendant moved to strike out the second amended complaint on the ground that it is "a sham and a sham pleading." The court allowed the motion. Plaintiff refused to plead further. Defendant moved for judgment on the pleadings. The motion was allowed and such judgment entered and the plaintiff appealed.

██ On this record the question is presented of the sufficiency of the amended complaint. The original complaint is out of the case under the rule that where a demurrer to a pleading is sustained and an amended pleading is filed, the latter supersedes the former and the former is deemed abandoned. *Kennedy et al v. Colt,* 216 Or 647, 649-650, 339 P2d 450. On the other hand, the effect of the order striking the second amended complaint was to restore the amended complaint. *Drake Lumber Co. v. Paget Mortgage Co.,* 203 Or 66, 76, 274 P2d 804; *Abrahamson v. Northwestern P. & P. Co.,* 141 Or 339, 348, 15 P2d 472, 17 P2d 1117.

ORS 16.130 provides, in part:

"At any time when the pleadings are complete, or either party fails or declines to plead further, the court may, upon motion, grant such judgment or decree as it may appear to the court the moving party is entitled to upon the pleadings."

██ While it is true, as a general rule, that a motion for judgment on the pleadings cannot be used as a substitute for a demurrer if the complaint is amend-

able so as to state a good cause of action, *Scott & Payne v. Potomac Ins. Co.*, 217 Or 323, 329-330, 341 P2d 1083, yet this is a case in which the plaintiff has formally in open court declined to plead further. It therefore falls within the language of the statute above quoted.

Neither the order striking out an allegation of the amended complaint nor that striking out the second amended complaint is assigned as error in the plaintiff's brief; but, as we are of the opinion that the amended complaint without the stricken matter states a cause of action, these rulings are now immaterial.

The contract sued upon is a lengthy and carefully drawn instrument. It is dated May 30, 1959, and the work was to be completed by October 15, 1959. After referring to the existing contract between Bate Lumber Co. and the United States Department of Agriculture, and that between the defendant and Bate Lumber Co. (which are incorporated by reference into the contract between the plaintiff and defendant, though not set out as exhibits to the amended complaint) and, after setting forth the agreement of the plaintiff to do the road construction work in accordance with these contracts, provision is made for payment to plaintiff as the road construction work progressed. The work was divided into engineering stations and into three categories: (1) clearing and pioneering of the road and roadway, (2) subgrading and installation of culvert, and (3) rocking (ballast and topping of roadway), and amounts are specified which the defendant agreed to pay to the plaintiff (less sums withheld) upon the completion of each category for any station. The contract next provides:

"On the 1st day of each calendar month hereafter, Subcontractor shall furnish to contractor in

duplicate form a statement as to the work completed, and the number of stations completed for each category of the work above mentioned. That contractor shall have, through and including the 10th day of the month to object to any work claimed to be performed by Subcontractor and in the event that the two parties cannot agree, the decision of the Forest Service representative shall be final as to the amount of work completed. Payment for such completed work shall be made on the 15th day of the month.

"In the event that there are no objections to the work given from Contractor to Subcontractor, then the work shall be paid for by contractor as claimed by Subcontractor on or before the 15th day of the month.

"In the event Subcontractor shall not furnish said statement on the 1st day of the month, the time for objections and payment shall be extended for the same number of days from the 1st to the time same is furnished."

There follows the provision which the defendant contends is a condition precedent and which we again quote, together with the remainder of the paragraph in which it appears.

"It is fully understood by and between the parties hereto that Contractor shall not be obligated to pay Subcontractor for any of the work until such time as Contractor has himself received the money from Bate Lumber Co. And it is further fully understood between the parties hereto that all work is subject to the approval of the Forester and Chief Engineer of the Bate Lumber Co. and any rejections of the work by them to Contractor shall automatically act as a rejection of such work by Contractor to Subcontractor."

Immediately following the foregoing is this provision:

"In consideration of the prompt and faithful

performance by Subcontractor of all such road construction work, Contractor agrees to pay without interest thereon the total sum therefore [sic] of $123,700.00; said sum hereby declared to be the agreed and reasonable total value and price of the road construction work * * *."

The parties then agreed that fifteen per cent. should be withheld from payments due the plaintiff until the contract was fully performed and approval given by the United States Department of Agriculture and the Bate Lumber Co.

"at which time and within fifteen days (15) of the final approval, the withheld moneys shall then be paid over to Subcontractor, subject to the other terms and conditions herein contained. That no advances will be made on behalf of any road construction work which exceeds the sum of 85% of the total consideration herein, to-wit: $123,700.00."

The contract further provides that the plaintiff must furnish a performance bond in a sum not less than $123,700 in favor of both the defendant and Bate Lumber Co. and that the failure to post such performance bond within the time stipulated "shall entitled [sic] Mill [i.e., Bate Lumber Co.] to cancel this contract forthwith and upon Mill's own motion", whereupon the contract would be deemed completely terminated.

The plaintiff further agreed to hold the defendant harmless from all damage sustained by Bate Lumber Co. as a result of the plaintiff's failure to perform, to carry during the life of the agreement property damage and public liability insurance protecting both the defendant and Bate Lumber Co. and to hold the defendant and Bate Lumber Co. harmless from all vicarious liability and damage whether arising in contract, tort, or otherwise suffered by Bate Lumber

Co. as a result of the plaintiff's performance or non-performance of the agreement.

There is also a provision requiring the plaintiff to incur all bills in its own name and to pay all indebtedness promptly when due. Plaintiff agreed to hold defendant harmless from damage sustained as a result of liens or other encumbrances created by plaintiff, and that defendant might pay off and discharge any such encumbrance and assess the amount of any such payment against the plaintiff.

Defendant contends that this is a contract for payment of the consideration out of a specific fund, to wit: moneys paid to defendant by Bate Lumber Co. and that proof of existence of the fund is essential to the establishment of his liability. We do not agree.

Where, from the contract, it appears that the creditor has agreed to look for payment from a specified fund, he cannot, on the failure of such fund not attributable to the fault of the debtor, hold the debtor personally responsible except in circumstances not now pertinent. *Gilbert et al v. Calif.-Ore. Power Co.*, 223 Or 1, 353 P2d 870; *Arment v. Yamhill County*, 28 Or 474, 43 P 653; 17A CJS 583, Contracts § 456. In such a case the burden is on the plaintiff to plead and prove that such a fund exists, *Furst & Thomas v. Elliott*, 56 Ida 491, 56 P2d 1064. It is not always easy, however, to determine whether the intention of the parties is to limit the right of the promisee to payment from a specified fund.

> "Where, from the contract, it appears that a stipulation for payment on receipt of a specified fund, or a provision indicating the source from which a fund for payment or performance is to be procured, is inserted merely for the purpose of fixing the time at which performance shall become

due, such stipulations will not be regarded as evidencing conditions precedent, but performance may be demanded within a reasonable time after the fund should have been realized or the contingency from which it is to be secured should have happened." 17A CJS 583, Contracts § 456.

If the agreement has regard to payment of a pre-existing debt the provision is usually held to be one fixing the time for performance rather than a condition precedent, *Noland v. Bull*, 24 Or 479, 33 P 983; Annotation, 148 ALR 1075. But an agreement to pay for labor and services when the promisor shall sell a certain farm was held by this court to be an agreement to pay at the expiration of a reasonable time for effecting the sale, *Branch v. Lambert*, 103 Or 423, 205 P 995. It is difficult to formulate a definite general rule and the decision in each case must be dependent upon its own circumstances, 17A CJS 583, Contracts § 456. And see Annotation LRA 1917B 1050. We think, however, that where the contract contains a definite and unambiguous promise to pay for labor and materials performed and furnished, or for other services, equally clear and unambiguous language, expressing the intention that the happening of a contingency over which the promisee has no control shall be a condition precedent to payment, must be found in the contract before the positive and absolute agreement to pay will be considered as superseded. *Nikolaus v. Howe*, 122 Cal App 2d 422, 265 P2d 99.

■ We take the contract at its four corners. The defendant's engagement to pay the stipulated consideration is expressed in unconditional terms and the provision in question, in our opinion, does no more than affect the time of payment. In unambiguous lan-

guage, the defendant agreed to pay designated sums, not upon receiving the money from Bate Lumber Co., but upon completion of various portions of the work on specified days, subject only to approval by the forest service representative. The contract does not state that the defendant shall not be obligated if the money is not received from Bate Lumber Co. nor that payment shall be made to plaintiff "out of" funds received by defendant from Bate Lumber Co. (as in so many cases holding the provision a condition precedent)[1] but that defendant shall not be obligated *until such time as*" the money is received by him. The clause is in the nature of a modification of the time provisions which immediately precede it and is followed by an unconditional agreement of the defendant to pay plaintiff $123,700 in consideration of the latter's prompt and faithful performance of the work.

The case at bar is very much like *Crass v. Scruggs & Co.*, 115 Ala 258, 22 S 81, an action on a contract in which the plaintiff agreed to do the grading on designated sections of a railroad, with an engagement of the defendant "absolute and unconditional in its terms" as the court put it "to pay the plaintiffs specified prices for the work." The contract provided for "[p]ayments based on engineer's estimates, and to be made on the 15th of each month, or as soon thereafter, as said R. R. Company pays or causes to be paid the said J. T. Crass [the defendant]." The court stated the question to be "whether payment to the plaintiffs of the promised compensation was conditional, dependent on payment by the railroad company to the defendant; or whether it was

[1] See, e.g., Carpenter v. Elmer R. Sly Co., 109 Cal App 539, 293 P 162; Frank v. Butte & Boulder etc. Co., 48 Mont 83, 135 P 904; Furst & Thomas v. Elliott, 56 Ida 491, 56 P2d 1064.

payable on the 15th of each month during the progress and on the completion of the work, or within a reasonable time thereafter for the company to make or cause payment to be made the defendant." 115 Ala at 264. The latter construction was adopted. The court asked whether it could be "reasonably supposed it was contemplated, that the plaintiffs would devote their time, labor and means to the work, they were bound to complete within a particular period, without an absolute engagement from the defendant to pay them?" After calling attention to the absolute and unconditional terms of the contract both with reference to the plaintiffs' engagement to do the work and the defendant's promise to pay the consideration, the court said:

"* * * The contract is not divisible; it is entire for the grading of the two sections; and if it had been silent as to the time of payment for the work, payment could not have been demanded until the work was completed. This was known to the parties, and as the contract was drawn with care, the time of payment was not left to implication, but was the matter of express stipulation. And it must be observed, the stipulation speaks of payment, and of the time of payment, not of *non-payment,* nor in avoidance of the duty of paying. Any other construction would render the contract inharmonious in its several parts; would place this stiplation in antagonism to the absolute engagement of the defendant to make payment of the compensation. The plaintiffs had no contract with the railroad company; were unknown to it; and to them the company owed no duty. The defendant had contractual relation with it, and from it expected to derive funds to meet his engagement to the plaintiffs; and it was *time* to realize these funds for which he was contracting, and not

freedom from liability if they were not realized."
115 Ala at 265-266.

These reasons seem to us to be sound and to be fully
applicable to the present case. Other decisions tend-
ing to support a like conclusion are *Knuppenberg v.
Lee,* 74 Wash 636, 134 P 508; *Mosser Co. v. Cherry
River B. & L. Co.,* 290 Pa 67, 138 A 85; *Nikolaus v.
Howe,* supra; *Nunez v. Dautel,* 19 Wall 560, 22 L Ed
161; *Allred v. Burns,* 106 NC 247, 10 SE 1034.

In this view of the case, therefore, it was not
necessary for the plaintiff to allege that moneys from
Bate Lumber Co. were available for payment of the
plaintiff's claim. The amended complaint stated a
cause of action. Inasmuch as by the terms of the
contract the work was to be completed on or before
October 15, 1959, and the amended complaint alleges
full performance and since this action was com-
menced on March 4, 1963, it is obvious that on that
date a reasonable time had elapsed for payment to be
made by Bate Lumber Co. to the defendant.

The judgment is reversed and the cause remanded
for further proceedings in conformity with this de-
cision.