Argued September 12, affirmed November 10, 1972

VRLA, *Respondent, v.* WESTERN MORTGAGE
COMPANY, *Appellant.*

502 P2d 593

*Dale A. Rader,* Portland, argued the cause for
appellant.

*Gary Peterson,* Portland, argued the cause for
respondent.

BRYSON, J.

Plaintiff, a licensed architect, commenced this action to recover the reasonable value of his services rendered while he was employed by defendant. Defendant appeals from a judgment for plaintiff in the amount of $8,230.

On March 1, 1968, Mr. Herbert Albright, president of defendant corporation, orally engaged plaintiff to design 98 apartment house units for construction on three acres of land in Multnomah County, Oregon, owned by defendant. Plaintiff was to prepare working drawings which would gain the approval of a lending agency for a construction loan. Plaintiff testified that the agreed compensation for the job was $300 per apartment unit, to be paid from the proceeds of a construction loan to be obtained by defendant. The parties did not discuss plaintiff's compensation in the event that the loan could not be procured.

During the next one and one-half years, Albright, on two occasions, substantially modified plaintiff's design instructions, but the parties maintained their basic $300 per unit agreement for plaintiff's compensation. Plaintiff worked without pay during this period, although at one point, when the project seemed to be folding, plaintiff offered to settle with defendant for $8,640. On September 26, 1969, Albright sent plaintiff a check for $500, which plaintiff assumed was a partial payment for his services. In late 1969 Albright terminated the project because he was unable to obtain a construction loan. Plaintiff then brought this action to recover the reasonable value of his services, reduced by the $500 payment.

Defendant contends that because the parties agreed to compensate plaintiff from construction loan

funds, the procurement of those funds was a condition precedent to defendant's duty to pay. Since the loan was never obtained, defendant argues that he should not have to pay.

When courts are faced with agreements which anticipate a payment from a specified source, difficult problems of interpretation arise. In this case the parties failed to provide for plaintiff's compensation in case the loan was unobtainable. The trial court felt, and we agree, that the agreement to pay plaintiff from loan proceeds was a "limitation on * * * time of payment and not * * * a denial of any payment for plaintiff's services if the loan was not made." There is evidence to support the trial court's finding.

> " 'Where, from the contract, it appears that a stipulation for payment on receipt of a specified fund, or a provision indicating the source from which a fund for payment or performance is to be procured, is inserted merely for the purpose of fixing the time at which performance shall become due, such stipulations will not be regarded as evidencing conditions precedent, but performance may be demanded within a reasonable time after the fund should have been realized or the contingency from which it is to be secured should have happened.' " *Mignot v. Parkhill,* 237 Or 450, 457-58, 391 P2d 755, 759 (1964), quoting 17A CJS 583, Contracts § 456.

Undoubtedly, the trial court considered defendant's $500 payment to be evidence of defendant's original promise to pay, and that the parties never considered the procurement of a loan to be a true condition precedent.

Defendant relies on *Parsons v. Bristol Development Co.,* 62 Cal 2d 861, 44 Cal Rptr 767, 402 P2d 839 (1965). In that case, an architect was hired to build

an office building, and he signed an employment agreement which provided that

> " '* * * a condition precedent to any duty or obligation on the part of the OWNER to commence, continue or complete Phase 2 or to pay ARCHITECT any fee therefor, shall be the obtaining of economically satisfactory financing arrangements which will enable OWNER, in its sole judgment, to construct the project at a cost which in the absolute decision of the OWNER shall be economically feasible.' "

The contract further provided that when the builder notified the architect to proceed with phase two, the builder should pay him 25 percent of his fee, and that the builder would be obligated to pay the remaining 75 percent "only from construction loan funds." A dispute arose concerning the builder's duty to pay the architect under phase two of the contract when the construction loan failed to materialize. The court was satisfied that the agreement clearly restricted the builder's promise to pay from the specified loan funds, and that the procurement of loan funds was a genuine condition precedent to the duty to pay.

The instant case is distinguishable. Here we have no similar unambiguous agreement expressing the parties' intention that the procurement of a construction loan was a condition precedent to defendant's duty to pay. The parties anticipated that payment would be made from loan proceeds but it is not clear that these proceeds were intended to be the sole source of payment. The trial court's determination that the parties did not intend to leave plaintiff uncompensated if the loan did not materialize is reasonable and is supported by the evidence.

Affirmed.