Argued and submitted August 2, affirmed November 8, 2006,
petition for review denied March 27, 2007 (342 Or 523)

## Michael MOODHE,
*Respondent,*

*v.*

## A. E. Bud BAILEY,
*Appellant.*

## C033142CV; A126230

147 P3d 352

David Schuck argued the cause for appellant. With him on the briefs was A. E. Bud Bailey.

John T. Bridges argued the cause for respondent. With him on the brief was Brown, Tarlow, Bridges & Palmer, P.C.

Before Edmonds, Presiding Judge, and Linder, Judge, and Huckleberry, Judge pro tempore.

EDMONDS, P. J.

**EDMONDS, P. J.**

Defendant appeals after a jury awarded damages to plaintiff on plaintiff's claim for breach of the parties' stock purchase agreement. On appeal, defendant assigns error to the trial court's failure to grant his motion for a directed verdict at the close of plaintiff's evidence, on the ground that the parties' agreement unambiguously provides that the payment of the obligations established by the agreement were to be made only by defendant's corporation and not by him personally.[1] We affirm because the parties' agreement is reasonably susceptible to more than one interpretation.

Plaintiff was the majority shareholder and defendant was a minority shareholder in a corporation known as Pro Car Care, Inc. (Pro Car). When plaintiff decided to retire from operating Pro Car in 1999, he and defendant entered into a stock purchase agreement under which defendant purchased plaintiff's stock. The agreement recites that plaintiff is the "Seller" and that defendant is the "Buyer." As to the payment of the purchase price for the stock, the agreement provides:

> "Section 2.1[.] Installment payments. Commencing on July 1, 2000, Buyer shall pay to Seller $1,200.00 per month and continue with 71 consecutive equal installments, through June 1, 2006, in the amount of $1,200.00. Such payment shall be in the form of continuing wages from Pro Car Care, Inc.
>
> "* * * * *
>
> "Section 2.3[.] Additional Payment. In addition to the Installment Payment set out above, Buyer shall cause Pro Car Care to pay to Seller an additions [sic] $1,000.00 per month, commencing on July 1, 2000 and continuing for an additional 71 consecutive months, through June 1, 2006."

Additionally, the agreement provides:

> "Section 7.  Corporate Debt. Buyer has been advised of the existence of substantial Corporate debt. All such debt is guaranteed personally by the Seller. Buyer has agreed, and

---

[1] Defendant makes additional assignments of error that we reject without discussion because such a discussion would not be of benefit to the bench and Bar.

agrees herein, that the service of all such debt is intrinsic to this agreement. Therefore, Buyer agrees Pro Car Care shall continue to service such debt by faithfully paying to the creditors such installment payments as have been agreed upon by Seller with the creditor."

Pro Car eventually failed to make the payments to plaintiff called for by the contract. Also, defendant closed Pro Car's business and, when it defaulted regarding the obligations mentioned in Section 7 of the agreement, Pro Car's creditors sued plaintiff on obligations that he had personally guaranteed. In turn, plaintiff filed this action against defendant in which he alleged, in part, that defendant was in breach of their agreement by failing to pay Pro Car's obligations as, in his view, the agreement contemplated.[2] Defendant defended the action on the basis that he had made no promise to fund or personally pay any obligation due under the agreement other than from the income of Pro Car. After plaintiff presented his evidence, defendant moved for a directed verdict, telling the trial court, in part:

"[the] contract * * * does not require any performance on * * * my part, it requires performance on the part of Pro Car Care to make payments in certain ways. And to the extent that the claims that are raised seek personal responsibility for any of the matters in those contracts, the contracts themselves do not require payment with regard to me personally."

Nonetheless, the trial court denied defendant's motion, a ruling that defendant now assigns as error on appeal.

■    Under ORCP 60, we cannot reverse a judgment on a jury verdict after the denial of a motion for a directed verdict unless there is no evidence from which the jury could have found the facts necessary to support the plaintiff's cause of action. *Brown v. J. C. Penney Co.*, 297 Or 695, 705, 688 P2d 811 (1984) (citing Article VII (Amended) of the Oregon Constitution). In this case, defendant was entitled to a directed verdict only if the parties' agreement was reasonably susceptible to only one meaning as a matter of law—that is, that defendant was not personally liable because the parties had

---

[2] Plaintiff made additional claims against defendant that are not at issue in this appeal.

agreed that the only source for payment of Pro Car's obligations to creditors and to plaintiff would be from Pro Car's income.

■■ Generally, where parties contract that payment is to be made from a particular source, the terms of the agreement are binding on them. *Gilbert et al v. Calif.-Ore. Power Co.*, 223 Or 1, 15, 353 P2d 870 (1960). However, as the court observed in *Mignot v. Parkhill*, 237 Or 450, 457, 391 P2d 755 (1964), "[i]t is not always easy * * * to determine whether the intention of the parties is to limit the right of the promisee to payment from a specified fund." It is only when the contract contains a definite and unambiguous promise to pay from a particular source that a condition subsequent will be deemed to have superseded the promise to pay the obligation under the contract. *Id.* at 458; *see also Vrla v. Western Mortgage Co.*, 263 Or 421, 424, 502 P2d 593 (1972) (holding that, merely because the parties agreed to compensate the plaintiff from a construction loan that was never obtained, it did not necessarily follow that the parties intended to leave the plaintiff uncompensated when the loan did not materialize); *cf. Arment v. Yamhill County*, 28 Or 474, 43 P 653 (1896) (holding that the parties' agreement contemplated no present or absolute indebtedness, but only the creation of a fund from which the plaintiffs were to be paid in the event that funds accumulated).

■ Here, the parties' contract is susceptible to more than one reasonable interpretation regarding their intention about whether Pro Car was to be the sole source of the payment of defendant's obligations. Under the terms of their agreement, defendant is identified as the "Buyer." Section 2.1 of the contract provides that *"Buyer* shall pay to Seller $1,200.00 per month" in 72 monthly installments, rather than providing that "Pro Car shall pay $1,200.00 per month" in 72 monthly installments. (Emphasis added.) Similarly, Section 7 recites that "Buyer has agreed, and agrees herein, that the service of all such debt is intrinsic to this agreement." Because those provisions identify defendant—not Pro Car—as the promisor, they give rise to a reasonable inference that the parties intended that defendant be personally responsible for the above obligations.

It also can be reasonably inferred from the language of the agreement that the parties intended that the obligations be solely those of Pro Car and that defendant had no personal responsibility for them. Section 2.1 of the contract provides, in part, that "[s]uch payment shall be in the form of continuing wages from [Pro Car]." Also, a sentence in Section 7 of the contract provides, "Therefore, Buyer agrees [Pro Car] shall continue to service such debt by faithfully paying to the creditors such installment payments as have been agreed upon by Seller with the creditor." Additionally, Section 2.3 provides that defendant "shall cause" Pro Car to pay plaintiff an additional $1,000 per month.

However, defendant was entitled to a directed verdict under ORCP 60 only if there was no evidence to support plaintiff's argument that the parties intended that defendant be personally responsible under the contract to pay the obligations owed to plaintiff and his creditors. Because the jury reasonably could infer from the contract itself that defendant was personally obligated under the contract and that Pro Car was merely a preferred source from which the obligations would be paid, it was not error for the trial court to deny his motion.

Affirmed.